[No. 12060.  Department Two.  March 24, 1915.]

## In the Matter of the Estate of NICK WELCH.

CORA WELCH, *Appellant*, v. MARTIN WELCH, *Respondent*.[1]

PARTNERSHIP—RELATION—EXISTENCE—EVIDENCE—SUFFICIENCY. In a proceeding for the appointment of a partnership administrator of a decedent's estate, findings that a saloon business was the partnership business of the deceased and his brother, are sufficiently supported by the evidence, although the deceased paid one-half of the purchase price of $14,000 from his own funds and gave his own obligations to secure the balance, the business was conducted in his name, and no division of profits was made, where it appears that he repeatedly declared that his brother had an interest in the business, and was a partner therein, that the brother actively participated in the management, doing half the work, and drew no fixed wage, that he kept the books, made deposits and performed the general duties of a partner; that the unpaid portion of the purchase price was entirely paid from the proceeds, and the sum taken from the business by deceased was no more than his advances and reasonable interest.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered March 13, 1914, upon findings in favor of the defendant, granting an application for the appointment of an administrator of partnership property.  Affirmed.

*Clark & Lockhart*, for appellant.

*H. J. Snively*, for respondent.

FULLERTON, J.—Nick Welch died intestate in the city of North Yakima on July 26, 1913.  He left surviving him a widow, but no issue, and his next of kin were two brothers, Martin Welch and John Welch.  At the time of his death, the decedent and his brother Martin Welch were conducting a saloon in North Yakima in the name of the decedent, which with the appurtenances and fixtures and stock on hand had a value of some $3,055.70.  There was also on deposit, as the proceeds of the business, in a local bank at North Yakima the sum of $706.67, and on deposit in a bank at Tacoma of

[1]Reported in 147 Pac. 4.

$7,500, each in the name of the decedent, Nick Welch. Some three days after the death of Nick Welch, a petition was prepared by Martin Welch's attorneys and executed by the widow, praying for the appointment of Martin Welch as administrator of the decedent's estate. In this petition, the property above mentioned was described as the partnership property of the decedent and Martin Welch. When the petition was being read to the court on the day appointed for the hearing thereon, the widow called attention to this allegation in the petition in a manner which indicated that she had not theretofore understood its purport. The court, however, granted the prayer of the petition and appointed Martin Welch as such administrator. Martin Welch thereupon qualified as such administrator by taking the required oath and giving bond, but later on his bondsman withdrew from the bond, and he was appointed special administrator, pending the reappointment of a permanent administrator.

Up to this time, Mrs. Welch had not been represented by counsel, further than the attorneys of Martin Welch can be said to have represented her. She thereupon procured counsel of her own selection and petitioned the court for the removal of Martin Welch as special administrator, praying that letters of administration be granted to her; averring in the petition that the property of which her husband died possessed was the community property of herself and her husband; that Martin Welch had no interest therein as a partner of her husband or otherwise; that she had been induced to sign the petition for the appointment of Martin Welch as such administrator reciting otherwise under a mistake as to its contents, and because of fraud and deceit practiced upon her by Martin Welch and his attorneys. Issue was taken on the allegations of the petition of Martin Welch, who also presented a counter petition averring that he was a partner in the business conducted in the name of Nick Welch, and praying that he be appointed administrator of the partnership. A trial was had upon the allegations of the petition and counter pe-

tition, in which the ownership of the business was put in issue, resulting in a decree of the court, finding "that at the time of the death of Nick Welch, to wit, on the 26th day of July, 1913, cross-petitioner, Martin Welch, and said Nick Welch, deceased, were copartners in the ownership of the saloon business conducted by said Nick Welch, deceased," and an order directing that letters of administration of the partnership estate be issued to him. This appeal is from that decree and order.

It is not questioned in this court that the trial court had jurisdiction to determine the issues presented by the petitions in this form of procedure, and the sole question argued by counsel is whether the evidence justified the conclusion of the trial court that the business conducted in the name of Nick Welch was in fact the partnership business of the decedent and Martin Welch. Much evidence has been introduced by each of the parties tending to support their respective contentions, and we are constrained to say, after its careful perusal, that it leaves no abiding conviction in our minds in favor of either contention. On the one side, are the outward circumstances; the fact that the purchase of the business was negotiated alone by the decedent; that he paid from his own funds one-half of the very considerable purchase price of $14,000; that he gave his own obligations to secure the remainder; that the business was conducted in his individual name, and that no division of the profits was ever made. On the other side, we have the repeated declarations of the decedent, commencing at a time when the negotiations for the purchase of the business were pending and extending down to a short period before his death, to the effect that his brother had an interest in the business and was a partner therein. Added to this, is the active participation of the brother in the business; that he drew no fixed wage; that he took care of one of the two shifts in which the parties divided the business day; that he kept the books of the concern; kept charge of the daily cash receipts; made the local deposits of

receipts, and generally performed duties that pertained to a partner rather than an employee. Again, the obligations given to represent the unpaid portion of the purchase price of the business were entirely paid out of the proceeds of the business, and the sum taken by the deceased and deposited in the Tacoma bank was no more than the sum he had originally invested therein, plus a very moderate rate of interest for the time the business had its use.

But it would unduly prolong this opinion without purpose to detail the evidence. It received the painstaking consideration of the trial judge, as is evidenced by the able and carefully considered opinion he filed in connection with his findings. We are unable to conclude that the evidence preponderates against his findings, and under the rule, are constrained to affirm his decree. It is so ordered.

MOUNT, CROW, ELLIS, and MAIN, JJ., concur.